David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiffs,
BRUCE M. and J.M.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE M., J.M.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY; SUTTER WEST BAY MEDICAL GROUP HEALTH AND WELFARE; and DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. 4:22-cv-06149-JST<br><br>**PLAINTIFFS BRUCE M. AND J.M.S' FIRST AMENDED COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; EQUITABLE RELIEF; AND ATTORNEYS' FEES AND COSTS** |

Plaintiffs, BRUCE M. and J.M. herein set forth the allegations of this First Amended Complaint against Defendant AETNA LIFE INSURANCE COMPANY; SUTTER WEST BAY MEDICAL GROUP HEALTH AND WELFARE; and DOES 1 through 10.

**PRELIMINARY ALLEGATIONS**

**JURISDICTION**

1.　Plaintiffs bring this action for relief pursuant to Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), and (a)(3). This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA Section 502 (e), (f) and (g), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiffs for employee benefits under an employee benefit plan

1  regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiffs' rights under the terms of an employee benefit plan.

3. Plaintiffs seek relief, including but not limited to: past mental health benefits in the correct amount related to Defendants' improper denial of Plaintiffs' claim; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; injunctive relief requiring Aetna to cease applying credentialing requirements not contained in the Plan; and any other form of equitable relief that may arise during the pendency of this action and that the Court may deem appropriate.

**PARTIES**

4. Plaintiffs are and at all times relevant were residents of the State of California.

5. At all relevant times, J.M. was a beneficiary under an employee welfare benefit plan, Sutter West Bay Medical Group Health and Welfare, ("the Plan") within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1).

6. Mental Health benefits under the Plan were at all relevant times administered by Defendant AETNA LIFE INSURANCE COMPANY ("Aetna").

7. Aetna is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California.

8. J.M. is BRUCE M.'s daughter and a Plan beneficiary.

9. BRUCE M. was the individual responsible for J.M.'s health care costs, and did in fact pay the out-of-pocket expenses for J.M.'s mental health treatment at issue herein that was denied by Aetna.

10. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including J.M. This action involves mental health claims denied by Aetna and guaranteed under the Plan.

//

# FACTS

11. The Plan guarantees, warrants, and promises coverage for medically necessary health care services, care and treatment, including but not limited to: health care services, mental health care, and the treatment at issue herein.

12. At all relevant times J.M. was a beneficiary of the Plan, and the Plan was in full force and effect.

13. The Plan contemplates treatment for participants and beneficiaries in a residential treatment center.

14. The Plan covers mental health expenses and services in a residential treatment program. The Plan states that covered services include the following:

> **Inpatient room and board** at the **semi-private room rate,** and other services and supplies related to your condition that are provided during your **stay** in a **hospital**, **psychiatric hospital**, or **residential treatment facility**. Private room charges that exceed the **hospital**'s **semi-private room rate** are not covered unless a private room is **medically necessary.** Inpatient benefits are payable only if the severity of your condition requires services that are only available in an inpatient setting.

15. The Plan defines medically necessary services as follows:

> [H]ealth care or dental services, and supplies or **prescription drug**s that a **physician**, other health care provider or **dental provider**, exercising prudent clinical judgment, would give to a patient for the purpose of:
> - preventing;
> - evaluating;
> - diagnosing; or
> - treating:
>   - an **illness**;
>   - an **injury**;
>   - a disease; or
>   - its symptoms.
>
> The provision of the service, supply or **prescription drug** must be:
>   a) In accordance with generally accepted standards of medical or dental practice;
>   b) Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's **illness**, **injury** or disease; and
>   c) Not mostly for the convenience of the patient, **physician**, other health care or **dental provider**; and
>   d) And do not cost more than an alternative service or sequence of services at least as likely to produce the same therapeutic or diagnostic results as to the diagnosis or treatment of that patient's **illness**, **injury**, or disease.

16. The Plan defines Residential Treatment Facility (Mental Disorders) as an institution that meets all of the following requirements:
- On-site licensed **Behavioral Health Provider** 24 hours per day/7 days a week.
- Provides a comprehensive patient assessment (preferably before admission, but at least upon admission).
- Is admitted by a **Physician.**
- Has access to necessary medical services 24 hours per day/7 days a week.
- Provides living arrangements that foster community living and peer interaction that are consistent with developmental needs.
- Offers group therapy sessions with at least an RN or Masters-Level Health Professional.
- Has the ability to involve family/support systems in therapy (required for children and adolescents; encouraged for adults).
- Provides access to at least weekly sessions with a **Psychiatrist** or psychologist for individual psychotherapy.
- Has peer oriented activites.
- Services are managed by a licensed **Behavioral Health Provider** who, while not needing to be individually contracted, needs to (1) meet the **Aetna** credentialing criteria as an individual practitioner, and (2) function under the direction/supervision of a licensed psychiatrist (Medical Director).
- Has individualized active treatment plan directed toward the alleviation of the impairment that caused the admission.
- Provides a level of skilled intervention consistent with patient risk.
- Meets any and all applicable licensing standards established by the jurisdiction in which it is located.
- Is not a Wilderness Treatment Program or any such related or similar program, school and/or educational services.

17. California's Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

18. J.M. has a long history of mental illness that, despite ongoing outpatient treatment, worsened to the point that she was a danger to herself.

19. At all times relevant, J.M. was diagnosed with, *inter alia*, bipolar disorder, borderline personality disorder with avoidant and obsessive-compulsive features, persistent

depressive disorder, generalized anxiety disorder, trauma-related disorder, neurodevelopmental disorder, and ADHD.

20. At the age of five, J.M. was sexually abused by a known adult.

21. By the age of ten, J.M. began displaying rapid cycles of happiness and rage. She was subsequently diagnosed with bipolar disorder and prescribed mood stabilizers and lithium.

22. J.M. also struggled with disordered eating as an adolescent and went through cycles of anorexia and bulimia. At the age of 20, J.M. entered residential treatment for anorexia.

23. From adolescence, J.M. attempted numerous inpatient and outpatient mental health treatments, including hypnotherapy, biofeedback, trauma-centered therapy, intensive outpatient programs, and partial hospitalizations.

24. Despite ongoing treatment, J.M.'s condition worsened. She suffered from increasing depression which ultimately led to a suicide attempt in early 2020.

25. As a result of her worsening condition, the failure of prior treatment attempts, and at the recommendation of her treatment providers, J.M. was admitted to Innercept, a residential treatment program.

26. At all times relevant, J.M.'s treatment at Innercept was medically necessary, based upon the reasoned medical opinions of J.M.'s mental health treatment providers.

27. Plaintiffs filed claims for mental health benefits with Aetna for J.M.'s treatment at Innercept.

28. Aetna denied the claims for J.M.'s treatment at Innercept.

29. Aetna claimed it denied the claims because Innercept was not accredited by Aetna or several national agencies, commissions, or committees.

30. But the accreditation requirements Aetna cited in its denial letter are nowhere in the Plan.

31. The Plan in Plaintiffs' possession only requires that a residential treatment facility "Meets any and all licensing standards established by the jurisdiction in which it is located."

32. Innercept is a 24/7 residential treatment facility located in Idaho and is appropriately licensed by the state of Idaho to provide intermediate behavioral health services to adolescents and young adults as required by the governing Idaho state regulations.

33. Plaintiffs appealed Aetna's claim denials in a voluminous appeal, pointing out, *inter alia*, that the terms Aetna relied on are nowhere in the Plan.

34. Plaintiffs' appeal attached copies of pertinent excerpts of the Plan, including the definition of Residential Treatment Facility (Mental Disorders) set forth, *supra*.

35. Plaintiffs' appeal also pointed out that Innercept is accredited by The Joint Commission, and attached a copy of the accreditation.

36. Plaintiffs' appeal further set forth Innercept's qualifications as a residential treatment facility and satisfaction of the Plan definition.

37. Plaintiffs' appeal requested a physical copy of any and all documentation related to the initial denial determination and the level one appeal determination.

38. Aetna denied Plaintiffs' appeal.

39. In upholding its denial, Aetna stated only "[t]he requested facility does not meet the out of network Residential Treatment Center criteria." Aetna's denial failed to identify these criteria and which criteria, if any, it contended Innercept lacked.

40. Aetna did not provide any documentation related to its initial denial determination or appeal denial as requested by Plaintiffs in their appeal.

41. As a result of Anthem's denials, Plaintiff BRUCE M. was forced to pay for J.M.'s care and treatment at Innercept from his own personal funds.

42. Plaintiffs have exhausted all administrative remedies regarding the denial of J.M.'s mental health benefits at Innercept.

//
//
//
//
//

6
FIRST AMENDED COMPLAINT                    CASE NO. 4:22-cv-06149-JST

# CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION
### Recovery of Benefits Due Under an ERISA Benefit Plan
**(Against AETNA LIFE INSURANCE COMPANY; SUTTER WEST BAY MEDICAL GROUP HEALTH AND WELFARE; and DOES 1-10 For Plan Benefits, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

43. Plaintiffs incorporate all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

44. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiffs' rights under the terms of a plan.

45. At all relevant times J.M. was insured under the health care plan at issue herein. At all relevant times J.M. met the medical necessity criteria for treatment required under the terms and conditions of the Plan.

46. Defendant wrongfully denied Plaintiffs' claim for benefits for treatment in the Following respects, among others:

(a) Failure to authorize and pay for medical services rendered to J.M. as required by the Plan at a time when Defendant knew J.M. was entitled to such benefits under the terms of the Plan;

(b) Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's claims for medical benefits;

(c) After J.M.'s claims were denied in whole or in part, failure to adequately describe to Plaintiffs any additional material or information necessary to perfect the claim along with an explanation of why such material is or was necessary;

(d) Failure to properly and adequately investigate the merits of J.M.'s medical claims and/or provide alternative and medically appropriate courses of treatment;

(e) Failure to provide J.M. with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1

(h)(3)(iii) by failing to consult with health care professionals who have appropriate

training and experience in the field of medicine involved in the medical judgment;

(f) Failure to thoroughly and independently evaluate J.M.'s medical records prior to

issuing their denials of Plaintiffs' claim and appeal.

47. By denying J.M.'s mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiffs' rights thereunder.

48. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
### (Against Defendants AETNA LIFE INSURANCE COMPANY; SUTTER WEST BAY MEDICAL GROUP HEALTH AND WELFARE; DOES 1-10)

49. Plaintiffs incorporate all preceding paragraphs of this First Amended Complaint as though fully set forth herein.

50. At all material times herein, Defendant Aetna was a fiduciary with respect to its exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Plan.

51. Plaintiffs asserts that a claim for benefits due under the Plan does not provide them with an adequate remedy at law in light of Defendant Aetna's continuing course of conduct in violating the terms of the Plan and applicable law as described below.

52. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

53. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then

prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

54. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

55. In committing the acts and omissions herein alleged, Defendant Aetna breached its fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

56. At all material times herein, Defendant Aetna violated these duties by, *inter alia,* the following:

 a. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.7272 and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

 b. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.7272 and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") by imposing nonquantitative treatment limitations on mental health facilities such as residential treatment centers that are greater than those imposed on analogous medical surgical facilities such as skilled nursing facilities, rehabilitation facilities, habilitation services, hospice facilities, or transplant services -- in particular imposing requirements regarding accreditation, weekly physician visits, and 24 hours per day/7 days per week on-site licensed providers unequally;

c. Consciously, unreasonably, intentionally, and without justification, basing its denial on a purported credentialing requirement while the Plan contains no such credentialing requirement;

d. Consciously, unreasonably, intentionally, and without justification, failing to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of Plaintiffs' claims for medical benefits;

e. After Plaintiff's claims were denied in whole or in part, consciously, unreasonably, intentionally, and without justification, failing to adequately describe to Plaintiffs any additional material or information necessary to perfect their claim along with an explanation of why such material is or was necessary;

f. Consciously, unreasonably, intentionally, and without justification, violating 29 C.F.R. § 2560.503-1(f) by failing to provide adverse benefit determinations that are responsive and intelligible to the ordinary reader;

g. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiffs' claims, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiffs' interests or the interests of the Plan at least as much consideration as they gave their own;

h. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiffs' claims, and related claims and/or similar claims, for mental health care benefits;

i. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

  j. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

  k. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

57. As a result of Defendant Aetna's breaches of fiduciary duty, Plaintiffs have been harmed, and the Defendant has been permitted to retain assets and generate earnings on those assets to which Defendant was not entitled.

58. Plaintiffs further request judgment permanently enjoining Defendant Aetna from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and cost.

59. In addition, Plaintiffs seek appropriate equitable relief from all Defendant, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiffs are entitled to benefits in the amount of the cost of J.M.'s treatment at Innercept, and the costs incurred in connection with appealing Aetna's denial.

60. Plaintiff also seeks injunctive relief requiring Aetna to cease applying credentialing requirements not contained in the Plan, and to cease imposing nonquantitative treatment limitations such as credentialing requirements, accreditation, weekly physician visits, and on-site licensed provider 24/7 requirements on mental health facilities that are not imposed on analogous medical/surgical facilities.

61. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendant's breach.

//
//
//

# PRAYER FOR RELIEF

## AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiffs pray that the Court grant the following relief as to the FIRST CAUSE OF ACTION:

50. Declare that Defendants violated the terms of the Plan by failing to provide mental health benefits;

51. Order Defendants to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

62. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

63. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiffs prays that the Court grant the following relief as to the SECOND CAUSE OF ACTION:

64. Order Defendants cease denying claims for residential mental health treatment based on accreditation requirements that are absent from the Plan and to cease imposing nonquantitative treatment limitations such as credentialing requirements, accreditation, weekly physician visits, and on-site licensed provider 24/7 requirements on mental health facilities that are not imposed on analogous medical/surgical facilities.;

65. To the extent the Court remands J.M.'s claim for benefits to Defendant, Order that Defendants reevaluate J.M.'s claims in compliance with California's Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, and MHPAEA;

66. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of accreditation requirements absent from the Plan. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

67. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of J.M.'s rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

68. For surcharge relief;

69. An injunction against further denial of J.M.'s benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

70. Provide such other relief as the Court deems equitable and just.

Dated: January 20, 2023                     Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiffs, BRUCE M. and J.M.