UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE M., et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>SUTTER WEST BAY MEDICAL GROUP HEALTH AND WELFARE, et al.,<br><br>   Defendants. | Case No. 22-cv-06149-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: ECF No. 26 & 28 |

Before the Court are Defendants Aetna Life Insurance Company's ("Aetna") and Sutter West Bay Medical Group Health and Welfare Plan's ("Plan") motions to dismiss. ECF Nos. 26 & 28. The Court will grant the motions in part and deny them in part.

I. **BACKGROUND**

Plaintiff J.M. was a beneficiary under the Plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* ECF No. 22 ¶ 5, 12. The Plan provides coverage for mental healthcare, including treatment in a residential treatment center. *Id.* ¶¶ 11–13. Aetna administered mental health benefits under the Plan. *Id.* ¶ 6.

J.M. has "a long history of mental illness" and has been diagnosed with multiple mental health conditions, including bipolar disorder, borderline personality disorder, persistent depressive disorder, generalized anxiety disorder, a trauma-related disorder, a neurodevelopmental disorder, and attention-deficit/hyperactivity disorder. *Id.* ¶¶ 18–19. J.M. further struggled with disordered eating and experienced periods of anorexia and bulimia that necessitated her entry into residential treatment at the age of twenty. *Id.* ¶ 22. J.M. also underwent inpatient and outpatient treatment for her other mental health conditions from adolescence but, despite ongoing treatment, her depression worsened to the point of a suicide attempt in 2020. *Id.* ¶ 23–24. On the

1 recommendation of her providers, J.M. was admitted to Innercept, a residential treatment program.
2 *Id.* ¶ 25.
3       Plaintiffs filed claims for mental health benefits with Aetna for her course of treatment at
4 Innercept. *Id.* ¶ 27. Aetna denied on the claims on the ground that Innercept was not accredited
5 by Aetna or a national agency, commission, or committee. *Id.* ¶ 29. Plaintiffs allege that the Plan
6 does not impose such a requirement. *Id.* ¶ 30. Plaintiffs appealed Aetna's denial and requested a
7 copy of documentation related to the initial denial and of the decision on appeal. *Id.* ¶ 37. Aetna
8 affirmed its denial and did not provide any of the documentation requested Plaintiffs requested.
9 *Id.* ¶ 38, 40. As a result of the denial, Bruce M. "was forced to pay for J.M.'s care and
10 treatment at Innercept from his own personal funds." *Id.* ¶ 41.
11       Plaintiffs filed the operative complaint on January 20, 2023. *Id.* ¶ 22. Plaintiffs allege that
12 Defendants violated the terms of the Plan in denying benefits to J.M. in violation of and breached
13 their fiduciary duties under ERISA. Plaintiffs bring claims under 29 U.S.C. §§ 1132(a)(1)(B) and
14 1132(a)(3) for improper denial of benefits and for breach of fiduciary duty, respectively. *Id.*
15 ¶¶ 43–61. They seek declaratory, monetary, and equitable relief. Aetna and the Plan each moved
16 to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on
17 February 10, 2023. ECF Nos. 26 & 29. The Court took the motion under submission without a
18 hearing on March 27, 2023. ECF No. 38.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

"Article III of the Constitution confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174

(9th Cir. 2004); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Where, as here, a defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the

plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## IV. DISCUSSION

Defendants argue that J.M. lacks Article III standing, that Bruce M. is not authorized to bring claims relating to the Plan,[1] and that Plaintiffs otherwise fail to state a claim.

### A. J.M.'s Article III Standing

Defendants argue that J.M. lacks standing bring an ERISA claim because she has not suffered an injury in fact and that J.M. lacks standing to pursue equitable relief.

#### 1. Injury in Fact

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Worldwide, Inc.*, 889 F.3d 956, 969 (9th Cir. 2018).

Defendants argue that J.M. has not suffered an injury in fact because her father, Bruce M.,

---

[1] The parties refer to the issue as one of statutory standing, but, in actuality, the question is whether ERISA authorizes Bruce M. to sue in these circumstances. The Ninth Circuit has explained that, although the caselaw "often refer[s] to the question as whether plaintiff has 'standing' or 'statutory standing' to sue under ERISA," the real question is "whether Congress has granted a private right of action to a particular plaintiff." *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 873 (9th Cir. 2017). The "common shorthand" of "standing" thus erroneously "suggests that subject matter jurisdiction may also be at stake." *Id.* For clarity, the Court frames the question as whether ERISA authorizes Bruce M. to bring his claims.

paid for the costs of her treatment at Innercept. In Aetna's view, that J.M. has neither "incurred any indebtedness" nor "been required to pay funds to any source," she lacks a concrete injury sufficient to confer standing. ECF No. 26 at 16.

Defendants' argument misunderstands the question. The question is not whether J.M. is presently in a state of indebtedness; rather, the question is whether Aetna wrongly denied J.M. benefits to which she was entitled under the Plan. "ERISA's core function is to protect 'contractually defined benefits.'" *Wit v. United Behavioral Health*, 5 F.4th 1080, 1092 (9th Cir. 2023) (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013)). As a result, courts have held that an individual suffers a concrete injury when the individual "was denied health benefits he was allegedly owed under [a] plan." *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 288 (6th Cir. 2016). This is because, as with "any contract claim . . . his injury does not depend on allegation of financial loss. His injury is that he was denied the benefit of his bargain." *Id.* The Supreme Court has recognized that "intangible harms can also be concrete" when they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. 2190, 2204 (2021). And it is established that such courts historically entertained suits for breach of contract where the plaintiff suffered no harm other than the underlying breach. *See*, *e.g.*, *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 420 (6th Cir. 2021) (White, J., concurring) (collecting cases); *Springer*, 900 F.3d at 292 (Thapar, J., concurring) (collecting cases).

The Ninth Circuit recognized this principle in *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. 2014). There, the plaintiff was assigned its patients' claims for payments of benefits and filed suit against the plan administrator for payment of denied benefits. *Id.* at 1287. The district court held and the defendant argued on appeal that the plaintiff lacked standing because the plaintiff "has not sought payment from its assigning patients for any shortfall" such that "those patients did not have the 'injury in fact' necessary for Article III standing." *Id.* at 1289. In other words, because the patients did not presently owe anything to their provider, the patients lacked standing and, by extension, the plaintiff lacked standing as assignee. In rejecting this argument, the Ninth Circuit wrote:

5

> Plan beneficiaries had the legal right to seek payment directly from the Plans . . . . If the beneficiaries had sought payment directly from their Plans for treatment provided by [the plaintiff], and if payment had been refused, they would have had an unquestioned right to bring suit for benefits. No one . . . would contend that the beneficiaries would have lacked Article III standing in that circumstance.

*Id.* at 1291.

The Ninth Circuit's recent decision in *Wit v. United Behavioral Health*, 58 F.4th 1080, 1093 (9th Cir. 2023) is also instructive. The plaintiffs—beneficiaries of ERISA-governed health benefit plans for which the defendant was the claims administrator—brought claims for improper denial of benefits and for breach of fiduciary duty. *Id.* at 1088. The Ninth Circuit held that the plaintiffs alleged a concrete injury as to their denial of benefits claim because the plaintiffs "alleged a harm—the arbitrary and capricious adjudication of benefits claims—that presents a material risk to their interest in fair adjudication of their entitlement to contractual benefits." *Id.* at 1093. As to the claim for breach of fiduciary duty, the Ninth Circuit held that the plaintiffs "alleged that [the defendant] administered their Plans in [its] financial self-interest and in conflict with the Plan terms. This presents a material risk of harm to [the plaintiffs'] ERISA-defined right to have their contractual benefits in their best interest and in accordance with their Plan terms." *Id.* at 1093. Here, J.M. claim for improper denial of benefits is predicated upon similar allegations that Defendants rendered decisions that were arbitrary and contrary to the Plan terms, ECF No. 22 ¶ 46, and her claim for breach of fiduciary duty is predicated on similar allegations that Defendants denied her claims in its own financial interest and contrary to the Plan terms, *id.* ¶ 56.

In short, Plaintiff sought payment from the Plan for charges incurred in connection with her treatment and her claim was denied. Provided that the claim should have been approved under the Plan, Aetna's denial concretely injured J.M. regardless of J.M.'s attendant indebtedness or lack thereof. Accordingly, the Court concludes that J.M. has standing to bring both of her claims.

Defendants' arguments to the contrary are without merit. Aetna first seeks to analogize this case to *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), which is readily distinguishable. The plaintiffs in *Thole* were two retired participants in U.S. Bank's retirement plan. *Id.* at 1618. Their plan was a defined-benefit plan in which "retirees receive a fixed payment each month, and the

6

1    payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or
2    bad investment decisions." *Id.* The plaintiffs brought suit under ERISA, claiming that the
3    defendants breached their duties of loyalty and prudence under ERISA by poorly investing the
4    plan's assets. *Id.* The Court held that the plaintiffs lacked standing because the "plan participants'
5    benefits are fixed and will not change regardless of how well or poorly the plan is managed." *Id.*
6    at 1620. Accordingly, the plaintiffs had "received all of their monthly benefits so far, and they
7    will receive those same monthly payments for the rest of their lives." *Id.* at 1619. The plaintiffs
8    consequently did "not have a concrete stake in the lawsuit." *Id.* By contrast, J.M. was allegedly
9    denied benefits to which she was otherwise entitled and thus has a concrete stake int his lawsuit.
10   And the Court in *Thole* expressly acknowledged that "[i]f [the plaintiffs] had not received their
11   vested pension benefits, they would of course have Article III standing to sue and a cause of
12   action . . . to recover the benefits due to them." *Id.* at 1619. What matters for purposes of Article
13   III is whether the benefits are owed; not whether the owed benefits will be used in satisfaction of a
14   debt.

15          Aetna next suggests that the Sixth Circuit's decision in *Springer*, quoted above, "is no
16   longer good law." ECF No. 37 at 10. Aetna relies on the Sixth Circuit's subsequent decision in
17   *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410 (6th Cir. 2021). There, the
18   Sixth Circuit recognized that "there is some indication that common law courts 'entertained
19   breach-of-contract claims even when 'no real loss proved,'" *id.* at 415 (quoting *Springer*, 900 F.3d
20   at 292 (Thapar, J., concurring)), and questioned whether a plaintiff who "suffers no monetary
21   loss . . . lacks Article III standing" in light of the Supreme Court's decision in *Thole*. *Id.* at 416.
22   However, the Sixth Circuit expressed that it "need not resolve these thorny questions today,"
23   rendering its observations dicta.

24          Finally, Aetna suggests that because J.M. obtained coverage "as a *beneficiary* under a plan
25   elected by another employee-member of the Sutter Plan," Bruce M., she is not a party to the
26   bargained-for exchange that the Plan represents. ECF No. 37 at 11 (emphasis added). J.M. is
27   equally a recipient of the benefit of the bargain in the form of contractual rights in the Plan and
28   brings suit to vindicate her rights to obtain that benefit. Whether Bruce M. made the election is

7

irrelevant to the question of whether J.M. is entitled to the benefit of the bargain, and Aetna offers no authority to the contrary.[2]

### 2. Equitable Relief

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Serv., Inc.*, 528 U.S. 167, 185 (2000). Aetna argues that J.M. lacks standing to bring her claims for equitable relief because she seeks prospective relief but fails to allege that the is under an imminent threat of future injury.[3] Plaintiffs argue that J.M. is "very likely to require treatment to manage [her mental health conditions] for the rest of her life." ECF No. 34 at 19.

The complaint identifies the following forms of equitable relief: disgorgement, surcharge, a declaration of J.M.'s rights under the Plan, an injunction prohibiting "Aetna from ever again serving as fiduciary with respect to the Plan," "injunctive relief requiring Aetna to cease applying credentialing requirements not contained in the Plan, and to cease imposing nonquantitative treatment limitations," ECF No. 22 ¶ 60, and "[a]n injunction against further denial of J.M.'s benefits," *id.* ¶ 69.[4] Disgorgement and surcharge are not prospective, and so Aetna's argument as to these forms of relief is without merit. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 664 (9th Cir. 2019).

As to the remaining forms of relief, which are prospective, Aetna is correct that J.M. is only entitled to such relief "if [s]he can show that [s]he faces a 'real or immediate threat . . . that

---

[2] The parties dispute whether the complaint sets forth allegations that support a reasonable inference that Bruce M. paid for J.M.'s treatment with the condition that J.M. reimburse Bruce M. for the payment. The Court need not resolve this dispute because J.M. has alleged a concrete injury regardless. The Court notes, however, that such an arrangement would evince a clear monetary harm, which "readily qualif[ies]" as a concrete injury. *TransUnion*, 141 S. Ct. at 2205.

[3] The Plan does not challenge J.M.'s standing to pursue equitable relief.

[4] Plaintiffs indicate in their brief in opposition that J.M. "seeks Plan reformation," but Plaintiffs' complaint does not identify such relief. ECF No. 34 at 17. Additionally, reformation is only available in narrow circumstances that entail mistake or fraud, and the complaint is devoid of any such allegations. *See Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). Plaintiffs also indicate that J.M. "seeks equitable estoppel," *see* ECF No. 34 at 17, but Plaintiffs have not requested that relief in their complaint, nor have they alleged any facts in support of such a claim, *see Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

[s]he will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). It is undisputed that Aetna's agreement with the Plan to underwrite coverage through the Plan expired on December 31, 2021 such that "Aetna has no ongoing role with respect to employee group health coverage offered to employees of Sutter West Bay Medical Group and their beneficiaries." ECF No. 27 ¶ 8. Accordingly, there is no threat that J.M. will file a future claim for benefits that could be denied by Aetna, and J.M. thus lacks standing to seek these forms of relief. *Cf. Bailey v. Anthem Blue Cross Life & Health Ins. Co.*, No. C 16-04439 JSW, 2019 WL 8333523, at *5 (N.D. Cal. May 31, 2019).

### B. Bruce M.'s Authorization to Sue

29 U.S.C. § 1132 "delineat[es] the universe of plaintiffs who may bring civil actions" under ERISA. *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 874 (9th Cir. 2017) (emphasis omitted) (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000)). For purposes of Plaintiffs' claim for improper denial of benefits, that universe includes "a participant or beneficiary." 29 U.S.C. § 1132(a)(1)(B). With respect to Plaintiffs' claim for breach of fiduciary duty, that universe more broadly includes "a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3).

Defendants argue that Bruce M. is not authorized to bring his claims because he is not a participant, beneficiary, or fiduciary. Plaintiffs concede that "Bruce M. is not himself a plan participant, beneficiary, or fiduciary" but argue that his "position in this regard is analogous to healthcare providers who render treatment to ERISA beneficiaries, and often receive assignments of the patients' benefits, empowering them to bring suit under ERISA's civil enforcement provisions." ECF No. 34 at 20.

The caselaw does not support Plaintiffs' argument. It is true that "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to a health care provider," *DB Healthcare*, 852 F.3d at 876 (quoting *Misic v. Bldg Serv. Emps. Health and Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam)), but such assignment "of the beneficiaries' right to reimbursement for that cost of care" must be "to the person who provided the beneficiary with the health care," *Misic*, 789 F.3d at 1377. Bruce M. does not and cannot allege that he

9

1  provided J.M. with the healthcare for which she sought benefits, nor does he allege that he

2  "hold[s] [a] valid assignment[]." *DB Healthcare*, 852 F.3d at 876.  And Plaintiffs cite no authority

3  that supports extending the foregoing principle to the present context.  Accordingly, the Court

4  concludes that Bruce M. is not authorized to bring his claims.

### C. Claim Sufficiency

#### 1. Incorporation by Reference

Under the "incorporation by reference" doctrine, the Court may "take into account documents 'whose contents are alleged in a complaint and whose authenticity no parties question, but which are not physically attached to the [plaintiff's] pleading.'"  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys., Inc. Sec. Litig.* 865 F.3d 1130, 1146 (9th Cir. 2016)).  This includes "situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.*

Aetna requests that the Court incorporate by reference documents that it argues constitute the actual Plan that governed J.M.'s claim.  ECF No. 26 at 21–22.  Plaintiffs, however, contend that Aetna is "trying to cover-up its . . . nonresponsive claims handling and [to] switch plan documents and [to] apply new plan language" and thus expressly dispute the authenticity of those documents.  ECF No. 34 at 8; *see also* ECF No. 35.[5]  Because Plaintiffs "dispute[] the authenticity of the document[s], 'the [C]ourt must accept [their] representation that there is a dispute for purposes of applying the incorporation by reference doctrine." *Casa Nido P'ship v. Kwon*, No.

---

[5] In addition to challenging the authenticity of the documents in their opposition, Plaintiffs filed objections separately in which they argue that "Defendants are attempting to assert that different, new plan language governs this dispute, however, Plaintiffs dispute this contention."  ECF No. 35 at 2.  While this separate filing does not comply with Civil Local Rule 7-3(a), the Court will nonetheless consider it because Plaintiffs filed it contemporaneously with their opposition, the opposition expressly incorporates the objections, and the opposition and objections collectively are within the 30-page limit set for Plaintiff's opposition.  *See* ECF No. 33.

20-cv-07923-EMC, 2021 WL 5053084, at *3 (N.D. Cal. Nov. 1, 2021) (quoting *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1027 n.77 (C.D. Cal. 2015)); *see Sinatro v. Barilla Am., Inc.*, 635 F.Supp.3d 858, 871 (N.D. Cal. 2022) ("[Incorporation by reference] is inappropriate given the parties' dispute about the authenticity of the exhibits and images therein."). Aetna's request is therefore denied, and the Court will not consider the documents nor arguments predicated on those documents.

### 2. Denial of Benefits

Aetna argues that J.M. fails to state a claim for improper denial of benefits because she fails to identify a Plan term that provides her such benefits.[6] Plaintiffs argue that J.M. that the allegations in the complaint suffice to state a claim.

The Court agrees with Plaintiffs. While Defendants are correct that, "at a minimum, '[a] plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question," *Regional Med. Ctr. of San Jose v. WH Adm'rs, Inc.*, No. 5:17-cv-03357-EJD, 2021 WL 4481667, at *4 (N.D. Cal. Sept. 30, 2021) (quoting *Steelman v. Prudential Ins. Co. of Am.*, No. 06-cv-2747 LKK/GGH, 2007 WL 1080656, at *7 (E.D. Cal., Apr. 4, 2007), the complaint contains such allegations. Plaintiffs allege that the Plan provides "coverage for medically necessary healthcare services, . . . including . . . mental health care," ECF No. 22 ¶ 11, and that coverage for mental health care includes "mental health expenses and services in a residential treatment program," *id.* ¶ 14. These descriptions are followed by the express language providing such coverage. *Id.* ¶¶ 14–15. Plaintiffs further allege that Innercept is a residential treatment facility within the meaning of the Plan, *id.* ¶¶ 25, 32, 36, and that J.M.'s treatment was medically necessary "based upon the reasoned medical opinions" of her mental healthcare

---

[6] Sutter purports to incorporate Aetna's arguments by reference to its motion. "The incorporation of substantive material by reference is not sanctioned by the federal rules." *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996). The Court will only consider arguments actually raised in the parties' briefing in deciding each of the motions to dismiss before it. *See Woolfson v. Conn Appliances, Inc.*, No. 21-cv-07833-MMC, 2022 WL 3139522, at *6 (N.D. Cal. Aug. 5, 2022) (declining to consider substantive arguments purportedly incorporated by reference); *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) ("[T]he Court will not consider the arguments that Plaintiff improperly seeks to incorporate by reference. This Court only considers arguments that are specifically and distinctively raised by the parties in their briefs.").

providers, *id.* ¶ 26.  Because the Court is required to accept these allegations as true, the Court concludes that J.M. has stated a claim for improper denial of benefits pursuant to 29 U.S.C. §§ 1132(a)(1)(B).

### 3. Breach of Fiduciary Duty

"A § 1132(a)(3) claim has two elements: '(1) that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan; and (2) that the relief sought is appropriate equitable relief.'"  *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 726 (9th Cir. 2021) (quoting *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014)).  The first element requires both that the defendant "be an ERISA fiduciary acting in its fiduciary capacity" and "violate ERISA-imposed fiduciary obligations."  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009) (quoting *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004)).

Aetna argues that J.M. has failed to state a claim for breach of fiduciary duty because her allegations as to the first element are conclusory.[7]  The Court disagrees.  As to the first requirement of that element, Plaintiffs allege that Aetna is, at minimum, a "functional" fiduciary with respect to the Plan because they allege that Aetna "exercises . . . discretionary authority or discretionary control respecting management of such plans" and "exercises any authority or control respecting management or disposition of its assets."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 654 (9th Cir. 2019) (quoting 29 U.S.C. § 1002(21)(A)); *see* ECF No. 22 ¶¶ 27–29, 33, 38, 39, 40, 50.

As to the second requirement of that element, ERISA requires plan fiduciaries "to act in accordance with the duty of prudence, duty of loyalty, duty to diversify investments, and duty to act in accordance with the documents governing the plan."  *Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021).  Plaintiffs' allegations pertain to the duty of loyalty and the duty to act in accordance with the documents governing the plan.

The duty of loyalty requires a fiduciary to discharge its duties "solely in the interest and

---

[7] Sutter offers no argument with respect to this claim.

beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants." 29 U.S.C. § 1104(a)(1)(A). As defined in the Restatement (Third) of Trusts, which is helpful in "determining the contours of an ERISA fiduciary's duty," *Tibble v. Edison Int'l*, 575 U.S. 523, 528–29 (2015), the duty of loyalty prohibits trustees from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests," Restatement (Third) of Trusts § 78 (2007). The duty of loyalty also "encompasses a duty to disclose," wherein a "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not asked for the information." *King v. Blue Cross and Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017) (first quoting *Washington v. Bert Belle/Pete Rozelle NFL Ret.* Plan, 504 F.3d 818, 823 (9th Cir. 2007; and then quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)).

Plaintiffs allege that Aetna "refus[ed] to give [J.M.'s] interests or the interests of the Plan at least as much consideration as they gave their own"; "interpret[ed] the Plan in a manner to deny and minimize benefits"; and denied benefits "in order to maximize its own profits," *id.* ¶ 50. These actions constitute the self-dealing that the duty of loyalty prohibits. Additionally, Plaintiffs allege that Aetna "did not provide any documentation related to its initial denial determination or appeal denial as requested by Plaintiffs," ECF No. 22 ¶ 40, and failed to "provide reasonable explanation of the basis relied on under the terms of the Plan" in denying the claim, *id.* ¶ 50. Both failures plainly implicate Aetna's duty to disclose. These allegations therefore suffice to state a claim for breach of fiduciary duty.

As to the duty to act in accordance with the governing documents, Plaintiffs allege that Aetna based its denial on a nonexistent credentialing requirement and refused to pay the claim with the knowledge that the claim was payable. *Id.* ¶ 55. These allegations also suffice to state a claim for breach of fiduciary duty.

Aetna's argument to the contrary is unpersuasive because, "[t]o state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.*,

241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017). This is because "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage." *Id.* (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. The motions are granted as to Bruce M.'s claims and J.M.'s claims for prospective relief. The motion is denied as to all other claims. Bruce M.'s claims are dismissed without leave to amend on the ground that amendment would be futile because his claims are foreclosed as a matter of law. *See Perez v. Mortg. Electronic Reg. Sys., Inc.*, 959 F.3d 334, 341 (9th Cir. 2020) (affirming dismissal with prejudice on futility grounds where amendment "would not have changed the determination that the action was a preemptive, pre-foreclosure action seeking to challenge banks' authority to foreclose, and that such an action is impermissible under California law").

**IT IS SO ORDERED.**

Dated: September 25, 2023



JON S. TIGAR
United States District Judge